SANTOS FELICIANO CORA, Plaintiff, Appellee and Appellant, v. HOWARD H. SUNDEM and PORTO RICAN & AMERICAN INSURANCE CO., INC., Defendants, Appellants and Appellees.

No. 11228.   Argued February 1, 1955.—Decided February 15, 1955.

*Córdova & González* and *Alberto Picó* for appellants-appellees. *F. Prieto Azúar* for appellee-appellant.

PER CURIAM.

On the night of July 12, 1949, Santos Feliciano Cora was walking along the road which leads from Guaynabo to Santurce and upon passing in front of the municipal crematory

was run over by a motor vehicle. Subsequently he filed an action for damages against Howard H. Sundem and the Porto Rican & American Insurance Co., Inc.[1] The case was heard on the merits and the trial court granted the complaint ordering defendants to pay plaintiff the sum of $7,000 plus costs, and $1,000 for attorney's fees. In support of its judgment the trial court rendered an opinion in which it made the following findings of fact:

"1.—On July 12, 1949, between 7:30 and 8:00 p.m., the plaintiff, Santos Feliciano Cora, after having made fruitless efforts to locate a client whose automobile he was going to repair, in the vicinity of the 'Vaquería Ojeda' of Bayamón, decided to return to his home in Santurce, but being unable to find a public service car along the road, he started to return on foot in the hope of finding one along the way.

"2.—The plaintiff was walking towards Santurce, on the right-hand side of the road and suddenly and without warning was hit from behind by the automobile, license No. 62073, driven by the defendant, Mr. Howard H. Sundem, the impact of which hurled him into the air and threw him to the left side of the road at a distance of about 15 feet.

"3.—The defendant's automobile was at the time running at an excessive speed and its driver gave no warning upon approaching the plaintiff, nor did he slacken the speed or swerve, despite the fact that the left-hand side of the road was at the time free from vehicles or pedestrians.

"4.—The plaintiff was left on the road, unconscious and bleeding profusely. From there he was taken to the District Hospital of Bayamón, very seriously injured. The plaintiff suffered a state of shock, the fracture of the right arm, and it was necessary to amputate his right leg above the knee in order to save his life, inasmuch as said leg had become infected with gangrene. The amputation was extremely painful, since it had to be performed by freezing. His arm was placed in a cast for forty-two days and the patient was confined in the hospital for 75 days. He likewise suffered a severe cerebral concussion, was unconscious for six days and ran a temperature and suffered from insomnia. The plaintiff is at present a permanent cripple

---

[1] Sundem was insured with the Porto Rican & American Insurance Co., Inc. in the amount of $10,000.

and because of his deplorable physical condition he is confined in a charity asylum.

. "5.—That the plaintiff was first confined in the Insular Insane Asylum on April 27, 1945, to receive treatment for a psychosis of an undetermined kind, chronic alcoholism and pathological drunkenness, being discharged on September 18, 1945, because his psychosis was considered cured. On September 28, 1945, he was again confined to receive the same treatment for alcoholism and pathological drunkenness, being discharged on February 19, 1946. On April 15 of that same year he came back for the same reason and was discharged on December 31, 1948. On February 17, 1949, he was again confined in the institution but left on July 5 of that same year with a probationary leave of three months because his behaviour was no longer considered a risk.

"6.—At the time of the accident the plaintiff was forty-three years old, and when not confined in the Insular Insane Asylum he was indistinctly engaged in repairing motor vehicles, in working as baker and as mason, without receiving a fixed daily wage or having a stable job.

"7.—The Court has given entire credit to the testimony of plaintiff's witnesses and not to that of the defendants. The version of defendant, Mr. Howard H. Sundem himself, is un-believable and irrational upon affirming that the plaintiff crossed in front of him, from the left to the right side, without his being able to see plaintiff, for in that event, the plaintiff would have crossed several lanes from left to right, and had defendant been driving at a moderate speed, he would have necessarily seen plaintiff in time to prevent the accident. The Court tried to obtain a categoric answer from defendant as to the form and manner in which the accident occurred, but defendant confined himself to answering that the plaintiff 'came out, of nowhere'. However, he testified that at that time his front head lights gave out light for about 75, 100 or 150 feet in front.

"8.—The court, contrary to defendants' evidence, concludes that the plaintiff was sober at the time of the accident, and that he had taken no liquor.

"9.—At the time of the aforesaid occurrence, a policy issued by the codefendant, Porto Rican and American Insurance Co., Inc. was in force, and it covered the legal liability of the defendant and insured Mr. Howard H. Sundem with respect to the driving of his automobile, license No. 62073, the insurance com-

pany being liable to third persons for the negligent acts of its insured up to the sum of $10,000 plus costs and attorney's fees."

In its conclusions of law, said court also stated that Sundem was negligent in driving his automobile at an excessive speed; in not reducing his speed upon approaching plaintiff, and in not swerving his vehicle to the side or give warning of his approach; and in failing to see plaintiff on the road and within reach of his front lights in time to prevent running over him, his negligent conduct being the proximate and efficient cause of the accident; that the plaintiff was not guilty of contributory negligence; that not only does the evidence adduced by plaintiff and believed by the court establish that the defendant, at the time of the accident, was going at an excessive speed thus jeopardizing the pedestrians' safety, but also the force of the impact, as well as the fact that the plaintiff was thrown approximately fifteen feet from the place of the accident, and the result of the serious bodily injuries which he received, corroborate the conclusion that the defendant was indeed going at an excessive speed.

■■ Plaintiff as well as defendant appealed from the judgment. We shall consider first the defendant's appeal. The only assignment on appeal is that the lower court erred in holding that the accident was due to the negligence of the defendant, Howard H. Sundem, and that plaintiff was in no way guilty of negligence. We have carefully read the transcript of evidence sent up [2] to this Court and as a result of our inspection of the record we can not conclude that the lower court erred in holding that the accident was due solely and exclusively to the defendant's negligence. Although plaintiff's evidence consisted of the testimony of several witnesses, only two of them offered direct proof with respect to how the accident happened. These were plaintiff himself

---

[2] Inasmuch as plaintiff as well as defendant appealed, the transcript of evidence sent up to this Court is mostly a repetition.

and Pablo Elmo Hernández.[3]  *Santos Feliciano Cora* testified essentially that on the night of the occurrence he was going on foot from Guaynabo to Santurce, because he was unable to find a car to take him there; that he was walking on the far right of the road, on the part where the pavement ends; that while going past the municipal crematory he was run over by an automobile, stating then the number of days he was confined in a hospital and all the sufferings he went through. *Pablo Elmo Hernández* testified by deposition taken in New York, inasmuch as he lived there at the time of the trial. He stated, in brief, that he saw plaintiff walking on the right-hand side of the road; that Sundem was driving at an excessive speed; that upon approaching the plaintiff he did not reduce his speed or swerve his vehicle; that Sundem ran over plaintiff while driving in the manner stated; that the defendant's automobile came to a stop after the accident and after having run over Feliciano Cora, at a distance of approximately one hundred feet; that the plaintiff was bleeding profusely; that he indicated to Sundem that he should take the wounded man to the nearest hospital and that "he refused to do so because his car would be stained"; and that he then took him in his own car to the district hospital of Bayamón; that at the place of the accident the highway was wide enough and there was space for six cars at a time; that Feliciano Cora was bleeding and the bones of his hands and legs showed through his skin; that defendant's car hurled plaintiff to the center of the highway; that the plaintiff received the impact with the front part of the car and the hood of the car was dented; and that he was driving his vehicle at a distance of about twenty feet behind defendant's vehicle.

Undoubtedly, the testimony of Pablo Elmo Hernández having been taken through deposition, this Court, in weigh-

---

[3] The other witnesses were two doctors, a lawyer and plaintiff's own brother. Their testimony does not throw any light with respect to the way the accident occurred.

ing his credibility, is in the same position as the trial court. However, said court heard the entire oral testimony and did not believe defendant's. Taking the entire evidence as a whole, and giving credit—as the trial court did—to Elmo Hernández' deposition, our opinion is that the lower court did not err in concluding that the accident was due exclusively to defendant's negligence.

The sole error assigned by plaintiff refers to the amount of compensation. Plaintiff considers that the award should have been greater. According to the findings of the trial court, and as revealed by the evidence introduced in the case at bar, the plaintiff suffered a state of shock, the fracture of the right arm and the amputation of his right leg above the knee; the amputation was extremely painful, since it had to be performed by freezing; his arm was placed in a cast for forty-two days and the patient confined in the hospital for 75 days; he likewise suffered a severe cerebral concussion, was unconscious for six days, ran a temperature and had many sleepless nights, and he is at present permanently crippled and because of his deplorable physical condition he is confined in a charity asylum. It likewise appears from the record that although the plaintiff was confined in the Insular Insane Asylum on several occasions, at the time of the accident he was out on a permit granted to him by said institution because his mental health had improved notably; and that he was a healthy, strong man, 43 years old. In view of the foregoing, as well as the low purchasing power of the dollar, we believe that the compensation to be awarded to plaintiff should be increased to $12,000. See the *Per Curiam* opinions in the cases of *Irizarry* v. *The People of Puerto Rico*, 75 P.R.R. 740, and *Vargas Nieves* v. *Water Resources Authority*, delivered on January 28, 1954 [not published], as well as *Batista* v. *Juliá Hospital*, 71 P.R.R. 770; *Roses* v. *Juliá*, 67 P.R.R. 518; *Pepín* v. *Ready-Mix Concrete*, 70 P.R.R. 723.

The judgment appealed from will be modified to the effect of increasing the amount of compensation for damages from $7,000 to $12,000 and as modified it will be affirmed.